# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 08-255 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION DENYING DEFENDANT'S MOTION IN LIMINE AND GRANTING GOVERNMENT'S MOTION IN LIMINE** |
| ANTON LAMONT BURNES, | |
| Defendant. | |

Erica H. MacDonald, Assistant U.S. Attorney, **UNITED STATES ATTORNEY'S OFFICE**, District of Minnesota, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Manny K. Atwal, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, District of Minnesota, 107 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

This matter is before the Court on the defendant's Motion in Limine (Docket No. 89) and the government's Motion in Limine (Docket No. 110), both addressing whether the defendant is entitled to present evidence to the jury in support of the defense of justification on Count 1. In a separately filed order, the Court granted the government's motion and denied the defendant's motion. (Docket No. 111.) The Court now issues this memorandum opinion to explain its reasoning for denying defendant's motion and granting the government's motion.

# ANALYSIS

Defendant Anton Lamont Burnes has been indicted on two counts. (Docket No. 94.) Count 1 charges defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and Count 2 charges him with possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). (*Id.*) On Count 1, defendant seeks to present evidence to the jury on the affirmative defense of justification. (Docket No. 89; *see also* Defendant's Request for Instructions to the Jury, Instruction No. 24, Docket No. 101.) Defendant argues that he was in fear for his life and therefore had no choice but to carry a firearm. (Mem. in Support of Justification Defense, Docket No. 108.)

As defendant acknowledges, the Eighth Circuit has never recognized the justification defense in a firearm possession case. (Docket No. 108 at 3.) *See United States v. El-Alamin*, 574 F.3d 915, 925 (8th Cir. 2009) ("Thus far, this circuit has not recognized a defense of legal justification to a violation of § 922(g)." (brackets and internal quotation marks omitted)). As defendant further acknowledges, other circuits have recognized that the defense is available only in "extraordinary cases." (Docket No. 108 at 4.) *See United States v. Salgado-Ocampo*, 159 F.3d 322, 326 (7th Cir. 1998); *United States v. Wofford*, 122 F.3d 787, 791 (9th Cir. 1997); *see also United States v. Thompson*, 403 F.3d 533, 537 (8th Cir. 2005) ("[T]he justification defense, if available, should only be utilized in very limited circumstances."). While the circumstances surrounding defendant's possession may arouse some sympathy, the Court concludes, as the Eighth Circuit has frequently concluded under similar circumstances, that "[e]ven assuming such a defense is available in the context of § 922(g), [the defendant has] failed

to present sufficient evidence to warrant a justification instruction." *El-Alamin*, 574 F.3d at 925; *see also United States v. Hudson*, 414 F.3d 931, 933 (8th Cir. 2005); *United States v. Luker*, 395 F.3d 830, 832 (8th Cir. 2005); *United States v. Taylor*, 122 F.3d 685, 689 (8th Cir. 1997); *United States v. Lomax*, 87 F.3d 959, 961-62 (8th Cir. 1996); *United States v. Blankenship*, 67 F.3d 673, 678 (8th Cir. 1995); *United States v. Martin*, 62 F.3d 1009, 1012 (8th Cir. 1995); *United States v. Stover*, 822 F.2d 48, 50 (8th Cir. 1987).

As defendant acknowledges, the factual showing required to assert the defense of justification, assuming the defense is available, "is nearly impossible to meet." (Docket No. 108 at 4.) Defendant "must demonstrate an underlying evidentiary foundation" as to all four elements of the defense:

(1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

(2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act;

(3) that he had no reasonable, legal alternative to violating the law; and

(4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

*El-Alamin*, 574 F.3d at 925 (internal quotation marks omitted; paragraphing added). If defendant can make the requisite evidentiary showing as to each element, "regardless of how weak, inconsistent or dubious the evidence on a given point may seem," he would be entitled to a jury instruction concerning the affirmative defense. *Hudson*, 414 F.3d at 933 (internal quotation marks omitted). If, however, "it cannot be said that a reasonable

person might conclude the evidence supports the defendant's position," defendant is not entitled to submit the affirmative defense to the jury. *Id.*; *see Mathews v. United States*, 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.").

Defendant's proffered evidence would tend to show that he was suspected in a shooting and that he was the intended target of retaliation for that shooting. (*See* Docket No. 108 at 1-3, 7-10.) *Cf. Blankenship*, 67 F.3d at 678 (describing the defendant's proffered evidence). On May 31, 2008, there was a shooting at Willard's Bar in St. Paul and Kevin Dunn was killed. (*See* Docket No. 110 at 1 (identifying the victim).) Soon after the shooting, rumors circulated in the neighborhood that defendant and his close friend Desmond Clark were responsible for killing Dunn. People confronted defendant and asked him if he was responsible for the shooting, but he denied any involvement. Cars drove slowly by defendant's home. Dominick Roman went to Dunn's family and told them that defendant and Clark were not involved, but they did not believe him. Defendant began keeping a low profile and rarely left his home. Defendant and Clark began making arrangements to move out of St. Paul to protect themselves.

On June 26, 2008, Clark was shot fifteen times and killed. At the scene of Clark's shooting, defendant told a St. Paul police officer that people had been after him and Clark since Dunn's shooting. The police later suggested that Clark's shooting might have been a case of mistaken identity, (Docket No. 108 at 7), and Roman would testify that Clark

was killed because Dunn's family thought that Clark was defendant and thought that defendant was responsible for Dunn's death.

In July 2008, defendant received threats, including a voicemail stating that "we will find where you rest and then you will rest in peace," and that "we got your boy and we gonna get you too nigga. Your girls ain't safe either." One of defendant's family members also received threatening messages. Defendant again began making arrangements to move out of town and began moving around, spending the night in various places so that he could not be located.

On the night of defendant's arrest, defendant was dropped off a few blocks away from where he had been staying. He then went to the home of his friend, Nicky, to have his hair braided. Nicky suggested that they get a drink at a nearby bar, and they did so. Defendant believes that at the time Nicky was cooperating with the government, because her boyfriend was under federal indictment. Defendant believes that Nicky was trying to work off her boyfriend's sentence by assisting the government in placing defendant in a public place. Defendant contends that the government thereby placed him in harm's way, requiring defendant to have a firearm for protection.

Even assuming that the justification defense is available and that defendant has made a sufficient showing with respect to the first, second, and fourth elements, no reasonable person could conclude that the facts offered show that defendant "had no reasonable, legal alternative to violating the law," and therefore he fails to meet the requirements of the third element. In *United States v. Hudson*, the court recognized that if the defendant had "a chance both to refuse to do the criminal act and also to avoid the

threatened harm," the third element of the justification defense is not satisfied. 414 F.3d at 934 (internal quotation marks omitted). In *United States v. El-Alamin*, the court concluded that the third element precluded a justification defense because the defendant "failed to demonstrate that he lacked a reasonable, legal alternative to violating the law." 574 F.3d at 926. The Eighth Circuit has "consistently refused to recognize justification as a defense where the defendant failed to pursue lawful options, particularly when violating § 922(g)(1)." *United States v. Bell*, 411 F.3d 960, 964 (8th Cir. 2005). The Eighth Circuit has considered several factors relating to the third element: whether the defendant had the opportunity to avoid being in the particular location where danger was imminent, whether the defendant could have turned to other entities for protection, and whether the defendant could have used a weapon other than a firearm for self-defense. The Court addresses each of these factors in turn.

First, refraining from leaving a safe location and refraining from entering a dangerous location are generally "reasonable, legal alternative[s] to violating the law." For example, in *El-Alamin*, the court observed that the defendant "could have refrained from entering the residence" where he perceived there to be an intruder, even though that residence was the defendant's own home. 574 F.3d at 925-26. Similarly, in *Hudson* the court noted that the defendant "could have stayed where she was." 414 F.3d at 934. In *United States v. Blankenship*, the court noted that the defendant "did not have to open the door," and, "[o]nce inside again, . . . could have remained there." 67 F.3d at 678; *see also United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996) ("Perez didn't **have** to go to the bank that afternoon. He could have remained in his apartment, where he felt safe,

while calling the police and asking them to check out the suspicious-looking cars outside."). In *United States v. Paolello*, the Third Circuit concluded that the defendant had made a sufficient showing that he had no reasonable opportunity to escape the threatened harm without taking the firearm, describing the following extraordinary factual circumstances:

> [A] man had harassed [Paolello] while he was in the bar, and . . . the man had followed him out of the bar, demanding that Paolello buy him a drink.
>
> . . . . [Paolello then] saw this man punch [Paolello's friend, who was just outside the bar], and at that point noticed that the man had a gun. . . . [Paolello] knocked the gun out of the man's hands to keep him from shooting [his friend]. He then grabbed the gun to avoid being shot himself instead of leaving it on the ground. . . . [H]e ran away with the gun because he was afraid that the man would send his "friends" after him.
>
> . . . . [Paolello] thought that the man and his friends were going to run after him.

951 F.2d 537, 542 (3d Cir. 1991). The Third Circuit concluded that "the evidence supported a conclusion that Paolello did not have a reasonable opportunity to escape the threatened harm without taking the gun." *Id.*

Defendant has not made an evidentiary showing that he had no choice but to be in a dangerous location where he would need a firearm to protect himself. His proffered evidence demonstrates none of the compelling circumstances described in *Paolello*. The evidence indicates that on the evening of his arrest, he was away from the place where he had been staying, and he chose to visit a friend to have his hair braided. He has failed to show that he had no choice but to be out in public where he would be vulnerable to a retaliatory attack. He has also failed to show that he had no choice but to go to the bar

that evening.  Defendant knew how to "lie low" and stay home, and he had been doing so for several weeks, but on the evening of his arrest, he elected to expose himself to the perceived danger of the people seeking to retaliate against him for Dunn's death.  Simply put, defendant did not have to go out that evening.  His reasonable, legal alternative to possessing a firearm at that time was to continue to "lie low" and not go out.

Second, enlisting protection from law enforcement or other entities is generally a "reasonable, legal alternative to violating the law."  In *El-Alamin*, the court observed that the defendant could have "called the police" once the imminent danger arose.  574 F.3d at 926.  In *Blankenship*, the court observed that the defendant "could have gone for help himself or sent his wife to the neighbors' residence to call the police."  67 F.3d at 678.  In *Hudson*, the court noted that one "reasonable alternative" available to the defendant was "to report her alleged fear . . . to responsible law enforcement authorities."  414 F.3d at 934.  The court in *Hudson* acknowledged that the defendant may have been reluctant to contact the police because she feared that a "rogue officer" was trying to kill her and because she feared police corruption if she attempted to report the officer's threats.  *Id.*  Nonetheless, the court concluded that the defendant had failed to satisfy the third element because there was "no indication that [the defendant] made any effort to seek assistance from other entities independent of the police, such as the local sheriff, federal or state law enforcement agencies, or community groups."  *Id.*  In *United States v. Lomax*, the court noted that the defendant "attempted to obtain a restraining order against one of his antagonists and filed a complaint against another," but concluded that the defendant appeared "to have exerted only minimal effort to act within the law to remedy his

problems." 87 F.3d at 962. In *United States v. Luker*, the defendant had alleged that he reported the threats to the police department and that the police refused to take any action, but the court nonetheless concluded that the defendant had failed to satisfy the third element because the police department had no record of the report and because the defendant could not provide the exact date of the report or the name of the person to whom he reported. 395 F.3d at 833. In *United States v. Gomez*, the Ninth Circuit concluded that the defendant had made a sufficient showing that he had no reasonable legal alternative but to obtain a firearm, describing the following extraordinary factual circumstances:

> Gomez didn't rush out to arm himself as soon as he realized his life was in danger; he tried many other avenues first. Unlike a lot of defendants, Gomez went to the authorities seeking protection. He asked the Customs Service to honor its promise to protect him. He asked the Sacramento County Sheriff for help. He went to his parole officer. He went to two churches.

92 F.3d 770, 777 (9th Cir. 1996) (citations omitted).

Defendant asserts that "he felt he could not turn to the police." (Docket No. 108 at 6.) He explains that calling the police "would have been an almost impossible task" because "to avoid the danger, [defendant] would have needed a full-time body guard. He simply could not call the police every time he stepped out of his doorway." (Docket No. 108 at 9.) Yet defendant has offered **no** evidence that he **ever** attempted to enlist the police, other officials, or community organizations to protect him. The Eighth Circuit in *Lomax* concluded that obtaining a protection order and filing a complaint against the individuals posing the threat constituted only "minimal effort to act within the law" and

was insufficient to satisfy the third element. Defendant's utter failure to make **any** effort to act within the law by enlisting the protection of police or other entities therefore must also be insufficient to satisfy the third element.

Third, using a weapon other than a firearm is generally a "reasonable, legal alternative to violating the law." In *El-Alamin*, the court recognized that once the defendant decided to enter the residence, he "did not have to upgrade his weapon from a knife to a firearm." 574 F.3d at 926. Defendant has failed to make any evidentiary showing that a firearm, as opposed to some other weapon, was necessary for his defense.

The Court concludes that defendant has failed to make the requisite evidentiary showing that "he had no reasonable, legal alternative to violating the law" at the time he possessed the firearm. He had the option of not going out in public. He had the option of enlisting the assistance of the authorities or community organizations for protection. He had the option of using a weapon other than a gun. No reasonable jury could conclude that defendant had no reasonable, legal alternative to possessing a firearm. Therefore, the Court denies defendant's Motion in Limine requesting that the court allow him the defense of justification as it relates to his possession of the firearm (Docket No. 89), and grants the government's Motion in Limine to Preclude a Justification Defense (Docket No. 110). Defendant is not entitled to a jury instruction on the defense of justification and is not permitted to present evidence of the justification defense to the jury.

DATED: October 30, 2009  
at Minneapolis, Minnesota.

                                              s/ John R. Tunheim  
                                              JOHN R. TUNHEIM  
                                              United States District Judge